UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
CIVIL ACTION 09-29-JGW

JAMES MATT RYAN,                                                    PLAINTIFF

V.

TERRY CONRAD,                                                      DEFENDANT

MEMORANDUM OPINION

Defendant Terry Conrad has filed a motion for summary judgment, to which plaintiff has filed a response.  The parties have consented to final disposition by the undersigned magistrate judge pursuant to 28 U.S.C. §636(c).   Having reviewed the parties' memoranda, the court concludes that oral argument is unnecessary, and that defendant is entitled to judgment as a matter of law.  Therefore, an entry of judgment will be filed herewith.

**I.  Findings of Fact**

Most of the relevant facts are not in dispute.  To the extent any dispute exists, the facts have been construed in favor of the plaintiff.

On August 31, 2005 plaintiff James Matt Ryan ("Ryan") and his then-wife, Beverly Prim Ryan, entered into a contract with Martin Construction and Romart Development whereby Martin (owner of the two businesses) was to build a residence on a lot then owned by Martin. During the period of home construction, defendant Terry Conrad was the Grant County Building Inspector, a position he continues to hold.  In that capacity, Conrad has the authority to inspect residential home construction and to issue Certificates of Occupancy.

After construction of Ryan's residence began, numerous disputes arose between Ryan

and Martin, culminating in Martin filing suit against Ryan in state court on November 2, 2006.

*See Dan Martin, et al. v. James Matt Ryan, et al.*, Grant Circuit Court Civil Action No. 06-CI-

00465.  Ryan filed cross-claims in April 2007, and thereafter filed additional cross-claims

against third-party defendants Grant County, Kentucky and the City of Williamstown, Kentucky

on December 7, 2007.  In his cross-claim against Grant County, Ryan alleged that the county had

"been informed of Building Code Violations at the Ryan home" and refused to enforce the

Building Code.  Ryan attached as an exhibit a list of alleged Building Code violations that Ryan

believed to exist at the time, which list was prepared by one of Ryan's experts in this federal

case.

   The deposition of Conrad (who was not a named defendant in the state case) was taken

on November 18, 2008 during the course of discovery in the state case.   According to the

plaintiff, Conrad testified at the time that he was aware of building code violations even though

he had issued a certificate of occupancy in May of 2006,[1] but that he did not require the

violations to be remedied due to the pending state court litigation between the plaintiff and the

builder.

   In a motion for summary judgment filed against Grant County in the state case, Ryan

argued:

> Conrad is an employee of Grant County.  He has a statutory duty to
> enforce the state building codes.... Conrad has failed to perform his duties, even
> blatantly refusing to do so.  This failure has led to damage to the Ryan Property....
> As a result of Conrad's failure to enforce the building code and Martin's refusal
> to honor his obligation, damage to the Property is ongoing and is destructive.
> ....
> Based upon the foregoing, James Matt Ryan requests this Court to order

---

[1]Amended Complaint,¶¶ 9-10.

2

Grant County, Kentucky to enforce the building code as it applies to the Ryan
Property and to do so immediately to protect the property from further damage.

*Id.* at Exh. 3.   The state court denied Ryan's motion for summary judgment but granted the

cross-motions for summary judgment filed by the two governmental entities.  Although the two

governmental entities are no longer defendants, Ryan and Martin's underlying claims remain

pending in state court.

Ryan filed a complaint in this court on March 17, 2009.  In his federal suit, Ryan alleges

that Conrad's failure to enforce the building code has violated his civil rights: 1) under the 14th

Amendment; 2) pursuant to 42 U.S.C. §1985; and 3) pursuant to 42 U.S.C. §1983.  Ryan seeks

mandatory injunctive relief as well as monetary damages.  Defendant timely moved for summary

judgment following the completion of discovery.  Ryan has filed a response in opposition, to

which no reply has been filed.

## II.  Analysis

Defendant Conrad argues that he is entitled to judgment as a matter of law on four

grounds: 1) plaintiff's claims are barred by the statute of limitations; 2) plaintiff has no

enforceable property right; 3) defendant is entitled to qualified immunity; and 4) the §1985 claim

is void for vagueness.  Alternatively, the defendant seeks a stay or dismissal of this proceeding

on the basis of *Younger* abstention.

### A. Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that

can be drawn from those facts ... in the light most favorable to the nonmoving party."  *Keweenaw

Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks

omitted).  Summary judgment is only appropriate if the pleadings, depositions, answers to

3

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

As previously stated, the court has construed all relevant facts in favor of the plaintiff, and no material facts are in dispute. Defendant's arguments are well-supported; therefore, defendant is entitled to judgment as a matter of law.

### B. Statute of Limitations

Defendant first argues that plaintiff's claims are barred by the statute of limitations. The limitations period for claims brought pursuant to 42 U.S.C. §1983 and §1985 is governed by state law. *See Fox v. Desoto*, 489 F.3d 227 (6th Cir. 2007). A one-year statute of limitations applies to personal injury claims in Kentucky. The facts are uncontested that Ryan believed that Conrad was refusing to enforce Kentucky Residential Building Code concerning his residential home during the summer of 2006, but did not file his federal complaint against Conrad until March 6, 2009.

Ryan concedes that his claims would fall outside the applicable one-year statute, but for the application of the continuing violation doctrine. Because I conclude that the continuing violation doctrine does not apply, the defendant is entitled to summary judgment.

The continuing violation doctrine may toll or extend the statute of limitations if: 1) the defendant engages in continuing wrongful conduct; (2) injury to the plaintiff accrues continuously; and (3) had the defendant at any time ceased his wrongful conduct further injury

would have been avoided. *Hensley v. City of Columbus*, 557 F.3d 693, 397 (6th Cir. 2009)(citations omitted). Application of the doctrine is generally limited to two categories of cases, "namely, those alleging serial violations" such as cumulative acts that combine to form a hostile work environment, "and those identified with a longstanding and demonstrable policy of discrimination" against a class of which plaintiff is a member. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003)(citations omitted).

The Sixth Circuit "employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to §1983 actions." *Id.* at 267; *see also LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1105 n. 3 (6th Cir. 1995)(courts "are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases") (internal quotation omitted). Continuing violation law has been viewed even more narrowly "in light of the Supreme Court's recently imposed limits on the viability of the doctrine." *Id.* (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 2070 (2002)).

In order to bring his claims within the doctrine, plaintiff alleges that "[e]ach time Conrad refused to enforce [the] Building Code, it constituted a new violation." Doc. 25 at 8. However, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)(quoting *Tolbert v. State of Ohio Dep't of Tranps.*, 172 F.3d 934, 940 (6th Cir. 1999)). "In evaluating whether plaintiff has alleged facts sufficient to make out a continuing violation, it is necessary to first consider the contours of the civil rights claims he has asserted." *Eidson*, 510 F.3d at 635.

It is clear that the sole right that Ryan alleges was violated by Conrad was (and remains)

Ryan's asserted property and/or due process right to have Conrad enforce the Kentucky

Residential Building Code.  It is equally clear that Ryan confuses "continual unlawful acts" with

the continued *effects* of Conrad's alleged failure to enforce the building code.  *See generally*

*Broom v. Strickland*, 579 F.3d 553, 555-556 (6th Cir. 2009); *Eidson*, 510 F.3d at 637.

Ryan alleges that he has suffered great injury as a result of Conrad's failure to enforce the

building code specifically against Martin, "since the burden was initially upon Martin to correct

all deficiencies, but now technically lies with Ryan" as the owner listed on the Certificate of

Occupancy issued to Ryan in July 2006.  Doc. 25 at 8.   Plaintiff's Amended Complaint refers to

Conrad's actions in issuing a Certificate of Occupancy in May of 2006, and in placing a notation

on that Certificate of Occupancy on June 9, 2006.  Doc 4, Amended Complaint, ¶¶ 9-11.

Plaintiff alleges that in August of 2006, "Conrad conferred with the then Grant County Attorney

regarding potential litigation between Ryan and the builder of the Ryan Home," and "[a]s a

result of that conversation, Conrad and the then county attorney agreed that Conrad would not

enforce the building code relative to the Ryan Home."  *Id.* at ¶¶ 12-13.   The Amended

Complaint is devoid of any allegations of actions by Conrad taken after 2006.   In short, the

actions or inactions of which plaintiff complains occurred in 2006, and plaintiff's injuries are but

"continuing effects" of the alleged 2006 decisions by Conrad to issue the Certificate of

Occupancy and not to enforce the Building Code.

The Seventh Circuit case relied on by the plaintiff offers no support for an extension of

the continuing violation doctrine to Ryan's claims.  In the cited case, the court explained that

"the key inquiry is whether [the complained of continued refusal to act] was a fresh act each day,

or whether it was a discrete act that took place upon the first refusal that merely had lingering

consequences." *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006). Here, Ryan was notified not

later than the fall of 2006 that Conrad had issued the Certificate of Occupancy and was not going

to enforce the building code in the manner sought by plaintiff. In fact, plaintiff filed suit in state

court in 2006 in an effort to require the City and County to enforce the code in the manner

requested. The defendant's continued failure to act in accordance with plaintiff's wishes is not a

"fresh act." Rather, Conrad's inaction after 2006 is nothing more than a "lingering

consequence" of his prior decisions.

  While the foregoing analysis explains why Ryan's allegations do not fall within the

"serial violation" category of the continuing violation doctrine, neither can he conform his

claims to fall within the second category of continuing violation cases, involving a "long-

standing and demonstrable policy" of illegality. As the Sixth Circuit recently explained:

> That [continuing violation] doctrine applies only to violations that are part of a
> longstanding and demonstrable policy" of illegality. *Sharpe v. Cureton,* 319 F.3d
> 259, 268 (6th Cir.2003). The policy must extend beyond the plaintiff who asserts
> the doctrine; to establish a continuing violation, the plaintiff 'must demonstrate
> something more than the existence of discriminatory treatment in his case. " *Id.*
> (quoting *Haithcock v. Frank,* 958 F.2d 671, 679 (6th Cir.1992)). Rather, " '[t]he
> preponderance of evidence must establish that some form of intentional
> discrimination against [a] *class* of which plaintiff was a member was the
> company's standard operating procedure.' " *Sharpe,* 319 F.3d at 269 (quoting
> *EEOC v. Penton Indus. Publ'g Co.,* 851 F.2d 835, 838 (6th Cir.1988)) (emphasis
> added).
>
> ..... Mere continuity of a sanction does not make it a continuing violation; and
> Cherry's allegations, if credited, would show only discrete acts of discrimination
> against him personally, *id.* at 267, not the class-wide policy necessary for the
> doctrine to apply.

*Cherry v. City of Bowling Green*, 347 Fed.Appx. 214, 216-217, 2009 WL 3172775, 2 (6th Cir.,

2009). In this case, Ryan does not allege that Conrad had a long-standing policy of neglecting to

enforce the Building Code, nor does Ryan allege that he is a member of any particular class. To

the contrary, Ryan specifically alleges that Conrad failed to enforce the Building Code as to his residential property alone. *See* Doc. 4, ¶¶ 11-12, 15 ("Conrad did not fail to enforce the building code relative to any other property....").

Because Ryan's claims against Conrad are unquestionably time-barred, the defendant is entitled to judgment as a matter of law on all claims. Nonetheless, the court will review the remainder of defendant's arguments.

### C.  Individual Property Interest in Enforcement of Zoning Laws

The plaintiff alleges that the defendant's failure to enforce the Building Code constitutes a violation of 42 U.S.C. § 1983. As a second basis for judgment in his favor with respect to that claim, defendant argues that plaintiff has no protected "property right" in the private enforcement of the building code.

In order to state a claim for a § 1983 violation, the plaintiff must establish: (1) a protected property interest; (2) of which he was deprived; and (3) such deprivation occurred under color of state law. *Jackson v. Heh*, 215 F.3d 1326 (6th Cir. 2000). Defendant first argues that plaintiff's property rights have not been abridged or denied, because Conrad issued a Certificate of Occupancy in 2006 and Ryan does not allege that he has been denied use of his property. However, construing plaintiff's complaint liberally, plaintiff does allege that Conrad's failure to enforce the Building Code itself violated plaintiff's property rights, regardless of whether plaintiff has had use of his property.

Defendant denies the existence of such a property right, citing case law involving the unsuccessful attempts of private citizens to require public officials to enforce zoning laws against others. *See, e.g., Gagliardi v. Village of Pawling*, 19 F.3d 188 (2nd Cir. 1994); *Brandt v.*

8

*Davis*, 191 F.3d 887 (8th Cir. 1999).  The referenced zoning law cases are at least somewhat distinguishable.

Nevertheless, numerous courts in both published and unpublished decisions have rejected claims identical to that presented by the plaintiff in this case.  In *Assoko v. City of New York*, 539 F. Supp.2d 728 (S.D.N.Y. 2008), for example, the plaintiffs alleged that the City conducted inadequate inspections and wrongfully issued Certificates of Occupancy in violation of the Building Code.  The district court dismissed plaintiffs' claims, holding that plaintiffs could not claim a property interest either in the enforcement of regulations and execution of building inspections, or in the defendants' alleged wrongful issuance of Certificates of Occupancy.  Because the analysis is well-reasoned and persuasive, I quote from *Assoko* at length:

**1. Property Interest in Enforcement of Regulations and Execution of Building Inspections**

Plaintiffs allege an "utter failure [by the City] to enforce on Plaintiffs' behalf virtually every significant statutory provision intended to ensure the maintenance of safe and healthy housing" and describe a clear right to the City's enforcement of the housing ordinances, regulations and laws." (Compl. ¶ 69, 72.) They further allege that the City conducted inadequate inspections" and "refused to inspect Plaintiffs' buildings." (Compl. ¶¶68, 70.) Plaintiffs contend that the independent source of this protected property interest is New York City Charter ("Charter") § 643, which provides: "The [D]epartment [of Buildings] shall enforce, with respect to buildings and structures, such provisions of the building code ... and other laws, rules and regulations as may govern the construction, alteration, maintenance, use, occupancy, safety, sanitary conditions, mechanical equipment and inspection of buildings or structures in the city...." (Pls.' Mem. Opp'n Defs' City Mot. Dismiss 6-7.)

Because the Charter does not deprive the City of all discretion in the enforcement of housing regulations and the performance of building inspection, it does not create a protected property interest. *See Kelly Kare, Ltd. v. O'Rourke,* 930 F.2d 170, 176 (2d Cir.1991) (Discretion over the conferral of a governmental benefit ... is fatal to a claim of entitlement to that benefit.). The Charter is merely a general grant of authority, outlining the "functions"of the Department of Buildings; it does not impose a non-discretionary duty to perform a certain number or quality

of inspections, or enforce each and every building regulation and provision in any particular way. FN11 Under Plaintiffs' logic, each time an agency, whose duties are defined in the Charter, fails to satisfy an obligation or improperly undertakes a responsibility, it constitutes a due process claim. The Constitution does not support such an invasion of the daily workings of elected officials and administrative agencies. Instead, "[g]overnment officials ... generally are given broad discretion in their decisions whether to undertake enforcement actions." *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 192 (2d Cir.1994); *cf. DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("The [Due Process] Clause is phrased as a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security."). Therefore, Plaintiffs fail to state a due process claim based on these allegations.

> FN11. Even if this regulation established a generalized obligation to enforce regulations or perform inspections, it does not create an absolute duty running to individual plaintiffs. *See Wooters v. Jornlin,* 477 F.Supp. 1140, 1146, 1148 (D.Del.1979) (dismissing due process claim based on failure to competently perform housing inspection because there was neither an absolute duty to perform the inspections, nor a duty owed to the individual plaintiffs); *see also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) ("The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law.").

## 2. Property Interest in Non-Issuance of Certificates of Occupancy

Next, Plaintiffs allege that the City violated their due process rights by improperly issu[ing] a certificate of occupancy on the Townhouses despite the existence of major structural deficiencies located*739 throughout the building.(Compl. ¶ 68.) Again, Plaintiffs argue that their "legitimate claim of entitlement" derives from the Charter, which bestows on the Commissioner of the Department of Buildings the power to issue certificates of occupancy for any building or structure situated in the city, provided that ... a certificate of occupancy of a building or structure shall certify that such building or structure conforms to the requirements of all laws, rules, regulations and orders applicable to it...." N.Y.C. Charter § 645(3)(d). While Plaintiffs refer to the wrong source, they appear to be correct that a Certificate may not issue except to a properly constructed home. The New York Building Code provides for a Certificate to be issued "[i]f the building is entitled to the certificate of occupancy.... Otherwise, the application shall be rejected." N.Y.C. Admin. Code 27-222(a). If a building does not conform to the requirements for a Certificate, the Commissioner has no discretion to issue one. *See Garrett v. Holiday Inns, Inc.,* 58 N.Y.2d 253, 262, 460 N.Y.S.2d 774, 447

N.E.2d 717 (1983) (acknowledging town's potential liability if it issued certificates of occupancy despite "known, blatant, and dangerous violationson premises). For purposes of the motion to dismiss, the Court assumes that the wrongful issuance of a Certificate violates municipal code.

However, the mere violation of a state law does not automatically give rise to a violation of federal constitutional rights. *Zahra,* 48 F.3d at 682. A plaintiff can claim a due process violation where a Certificate was wrongfully *withheld,* at least where the plaintiff can show a clear entitlement to a Certificate under state law. *See O'Mara v. Town of Wappinger,* 485 F.3d 693, 700 (2d Cir.2007) (recognizing but denying substantive due process claim because plaintiff failed to show clear entitlement to issuance of certificate of occupancy). The injury in such a case is apparent; where a Certificate is withheld, the owner of a property is affirmatively deprived of the use of the property by the government. *See, e.g.,* N.Y.C. Admin. Code § 26-222 ("It shall be unlawful to occupy or use any building ... unless and until a certificate of occupancy shall have been issued by the commissioner....").

In contrast, Plaintiffs here allege that the City wrongfully *issued* Certificates,[FN12] allowing them to purchase defective homes. This claim cannot sustain a substantive due process violation because the issuance of a Certificate, even if in violation of municipal code, does not cause an injury attributable to the government that rises to a constitutional level. Unlike the case where a Certificate is wrongfully withheld, the City did not affirmatively deny Plaintiffs any benefit or cause Plaintiffs any harm. If the city had withheld the Certificates, plaintiffs would not, as they claim, have received a house built to code, but rather would not have been able to purchase the home at all. Plaintiffs' alleged injuries were the product of defective construction of the homes, and the breach of contract by the developer, not the actions of the government. Plaintiffs' claim proceeds on the flawed assumption that the issuance of a Certificate makes a municipality *constitutionally* responsible for all harms flowing from defects in a  building, even if caused by private parties. This is simply not the case. A municipality is responsible for injuries caused by its actions, and even the wrongful issuance of a Certificate does not cause an injury to the recipient attributable to the government, let alone an injury rising to a constitutional level. To the contrary, it bestows a clear benefit on the recipient. Therefore, the wrongful issuance of a Certificate, even if in violation of municipal code, does not amount to a due process violation.

> FN12. Not surprisingly, there are few due process claims based on the wrongful issuance of certificates of occupancy. In one such case, *Bletter v. Inc. Vill. of Westhampton Beach,* 88 F.Supp.2d 21 (E.D.N.Y.2000), the court denied such a claim, although it did so after reinterpreting it as a claim of a property interest in proper

> certification procedures. *Id.* at 25. Citing *Zahra,* the court found
> that there is no property interest in the procedures leading up to the
> issuance of a certificate of occupancy. *Id.* at 25-26.

*Assoko v. City of New York,* 539 F.Supp.2d 728, 738 -740 (S.D.N.Y.,2008)(additional footnotes omitted).

Although neither the parties nor this court has discovered Sixth Circuit authority on point, other federal courts have rejected similar claims.  *See Rymer v. Douglas County,* 764 F.2d 796, 802 (11th Cir. 1985)(upholding dismissal where plaintiff alleged that defendant had improperly issued building permit, on grounds that municipality's intentional or negligent nonenforcement of municipal ordinance was not "sufficiently egregious to be constitutionally tortious.")(internal quotation and additional citation omitted); *Seabrook v. City of New York,* 509 F. Supp.2d 393 (S.D.N.Y. 2007)(dismissing homeowners' constitutional claims against municipal defendants for failing to enforce housing regulations and wrongfully issuing certificates of occupancy); *Wooters v. Jornlin*, 477 F. Supp. 1140, 1146-47 (D. Del. 1979), *aff'd*, 622 F.2d 580 (3d Cir. 1980), *cert. denied*, 449 U.S. 992 (1980)(holding that there is no constitutional right to a proper building inspection).  *See also Hopkins v, DeStefano*, 2009 WL 4349535 (D. Conn., 2009)(granting summary judgment to municipal defendants on plaintiff's constitutional claims that defendants failed to enforce mandatory State Building Code); *Willets Point Industry and Realty Ass'n v. City of New York*, 2009 WL 4282017 (E.D.N.Y. 2009)(holding that where municipality's obligation to maintain infrastructure serves public rather than private ends, the existence of that obligation does not create a protected property interest that can be enforced by individual citizens); *Zornes v. McKee*, 2008 WL 4816981 (W.D. Mo. 2008)(municipal defendants' failure to enforce building code did not rise to level of due

12

process violation).  *But see Amos v. McHale*, 139 F.3d 887 (4ᵗʰ Cir. 1998)(Table, text available
on Westlaw, suggesting in dictum that a failure to enforce a mandatory building code may
violate a party's substantive due process rights, if it is alleged that the official had no discretion).

Like other courts, the Sixth Circuit employs the "entitlement test" to determine if a
plaintiff has a protected property interest.  *Triomphe Investors v. City of Norwood*, 49 F.3d 198,
202 (6th Cir. 1995).  Under this test, an individual must be entitled to the right in order to have a
protected property interest; entitlement is determined by the level of discretion given to the
official enforcing the ordinance.  *Id.*

In Kentucky, the Kentucky Residential Code, not the more general state building code,
applies to residential dwellings.  *See* 815 Ky ADC 7:125 (2).  The Residential Code states that
"[a]fter the building official inspects the building or structure and finds **no** violations of the
provisions of this code or other laws that are enforced by the department of building safety, the
building official **shall** issue a certificate of occupancy. . . ." Kentucky Residential Code 2002, R
110.3 (emphasis added).  Because the Residential Code uses language that requires **all** Code
violations to be corrected before a Certificate of Occupancy may be issued, plaintiff could
conceivably argue that the Building Inspector does not have discretion to issue a Certificate of
Occupancy if he finds Code violations.  *See Triomphe Investors,* 49 F.3d at 203.

However, a party claiming entitlement to a governmental service "must further show that
the duty is owed to him as an individual rather than to the public at large."  *Was v. Young*, 796 F.
Supp. 1041, 1052 (quoting *Westbrook v. City of Jackson*, 772 F. Supp. 932, 939-40 (S.D. Miss.
1991, additional citation omitted)).  As in the line of authority cited above, the use of "shall" in
the Kentucky statute here must be read as "directory rather than mandatory."   "[I]n cases

13

involving prospective action by government officials, the word 'shall' may be given a merely directory meaning, if the law's purpose is the protection or organization of the government by guidance of its officials rather than the granting of rights to a private person." *Wooters v. Jornlin*, 477 F. Supp. at 1146 (holding duties were owed to public at large, and not enforceable by individuals).

Because plaintiff has no individualized right to enforce the Kentucky Residential Code or Building Code, plaintiff does not have a protected property interest, and defendant is entitled to judgment as a matter of law.

### D.  Qualified Immunity

The defendant also seeks summary judgment on the basis of qualified immunity, arguing that he did not violate any clearly established constitutional right of the plaintiff.  I agree.

The purpose of qualified immunity is to provide governmental officials with the ability "reasonably to anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (internal quotation omitted).  The general rule is that if the law relating to the right at issue is clearly established, the government official is not entitled to immunity unless extraordinary circumstances exist.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1981).

I have already found that the defendant did not violate any constitutional right held by the plaintiff.  Even if a reviewing court were to overrule that determination, defendant's conduct cannot be said to have violated any "clearly established" right given the overwhelming authority cited from other jurisdictions and the lack of any controlling authority in the Sixth Circuit.

But if a "clearly established" right existed, the defendant would still be entitled to

14

qualified immunity due to the extraordinary circumstances presented. Although consulting an attorney and relying on rendered legal advice alone is not extraordinary for purposes of qualified immunity, it is a factor to consider. *See York v. Purkey*, 14 F. App'x 628, 633 (6th Cir. 2001) (citing *Buonocore v. Harris*, 134 F.3d 245, 253 (4th Cir. 1998).

When determining whether reliance on legal advice constitutes an "extraordinary circumstance," four factors are considered. *Id.* These factors are: (1) whether the advice was unequivocal and specific to the facts at hand; (2) whether complete information was provided to the attorney; (3) the competence of the advising attorney; and (4) how soon after the advice was given were the actions taken in reliance on such advice. *Id.* All of these factors weigh in favor of finding an extraordinary circumstance and granting qualified immunity in this case. The plaintiff homeowner asked the defendant Building Inspector to force the contractor to make certain repairs. When the defendant called the contractor, the contractor informed him that the plaintiff had "kicked him off the site," and the contractor further claimed that the plaintiff owed him money. Presented with a unique situation, the defendant contacted the County Attorney for advice. Based on that advice, the defendant chose not to enforce the Building Code until the litigation was resolved. Thus, the defendant clearly sought advice specific to the situation at hand, not general instruction. The County Attorney is presumed to be competent, and the defendant's conduct was taken immediately following receipt of, and in reliance on, that advice. If ever extraordinary circumstances existed, it is in this case.

### E.  No Claim Under §1985

The plaintiff alleges that defendant's failure to enforce the Building Code violates his rights under 42 U.S.C. § 1985, specifically, his equal protection rights. *See* Amended Complaint

at ¶ 18.  In order to state an actionable claim, the plaintiff must allege both an existence of a conspiracy and "some class-based discriminatory animus behind the conspirators' action."  *Dunn v. Tennessee*, 697 F.2d 121, 124 (6th Cir. 1982) (citing *Griffin v. Breckenridge*, 402 U.S. 88, 102 (1971).  The Sixth Circuit has required that plaintiffs establish four elements:  (1) a conspiracy; (2) for the purpose of either directly or indirectly depriving any person or class of persons of equal protection of the laws; (3) an act furthering the conspiracy; and (4) whereby a person is injured, his property is injured, or he is deprived of rights or privileges.  *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003).

The plaintiff must establish not only that a conspiracy existed, but that the conspiracy was because of a "class-based discriminatory animus."  The plaintiff must be a member of a class protected by § 1985, which has been interpreted to require that the plaintiff have "the characteristics of a discrete and insular minority, such as race, national origin, or gender."  *See id.* at 519.

Here, the only conspiracy the plaintiff alleges is between the defendant and the County Attorney.  However, the plaintiff fails to allege that he is a member of a class protected by § 1985.  Instead, the plaintiff merely alleges that the defendant discriminated against him because he was involved in litigation.  Plaintiff's Memo in Opp. at 17.  This "class" is not one with characteristics of a discrete and insular minority.  At best, this is individual discrimination, which does not support a § 1985 claim.  *See Pellow v. Oakland County Dept. of Pub. Servs.*, No. 97-1461, 1998 WL 432473, at *2 (6th Cir. 1998) (noting that alleging only that one is treated unfairly as an individual does not establish a §1985 claim).   Therefore, the plaintiff fails to establish his claim, and this claim should be dismissed.

16

**F. "Other" Claims**

Ryan argues that because Conrad's arguments are limited to opposing Ryan's claims under 42 U.S.C. §1983 and §1985, Ryan's separate "claims" involving a 14th Amendment violation and seeking a mandatory injunction are not subject to dismissal. However, no claim exists under the Fourteenth Amendment without reference to 42 U.S.C. §1983, which provides the statutory framework for vindicating Constitutional rights. Similarly, a request for a mandatory injunction is simply a request for a specific remedy. Absent a legal basis for that remedy, the request does not stand as a separate "claim."

Finally, plaintiff has brought suit against Conrad in both his official and individual capacities. Because plaintiff's claims are entirely based upon Ryan's performance of his governmental duties as Building Inspector, he is entitled to judgment as a matter of law in both capacities.

**G. Abstention Doctrine**

In the alternative to the stated grounds for judgment on the merits, Conrad argues that this court should dismiss or stay proceedings under the *Younger* abstention doctrine. The *Younger* doctrine generally requires a federal court to stay federal litigation when a previously filed, related state court proceeding provides an adequate opportunity to raise the same constitutional challenges. Plaintiff argues that the doctrine is inapplicable because the defendant was not a named party in the state action, which is otherwise based on the same underlying set of facts and circumstances. However, Conrad is named in this action only because of his actions in his official capacity on behalf of the City of Williamstown and Grant County. Therefore, the parties are "essentially the same." *See Feiger v. Cox*, 524 F.3d 770, 774 (6th Cir.

2008)(reasoning in applying *Younger* abstention doctrine that there was an underlying proceeding because the parties were "essentially the same").

Just the same, given that defendant is entitled to summary judgment on all claims, federal abstention is wholly unnecessary.  The grant of judgment to the defendant will have no impact on the related state proceedings, where similar claims were previously dismissed in that court against the municipal and county defendants.

### III.  Conclusion and Order

Pursuant to the entry of judgment filed herewith, **IT IS ORDERED THAT:**

The defendant's motion for summary judgment [Doc. 18] be **GRANTED,** that all claims against the defendant be dismissed, and that this case be stricken from the docket.

This is the 30th day of March, 2010.

Signed By:

*J. Gregory Wehrman*

United States Magistrate Judge

18